| UNITED STATES BANKRUPTCY COURT<br>FOR THE EASTERN DISTRICT OF PENNSYLVANIA | |
|---|---|
| CIARDI CIARDI & ASTIN<br>Albert A. Ciardi, III, Esquire<br>Jennifer E. Cranston, Esquire<br>One Commerce Square, Suite 3500<br>2005 Market Street<br>Philadelphia, PA 19103<br>(215) 557-3550<br>(215) 557-3551 fax<br>aciardi@ciardilaw.com<br>jcranston@ciardilaw.com | |
| In Re:<br><br>GOODMAN TANK LINES, INC.,<br>                              Debtor. | CASE NO. 15-13768<br><br>CHAPTER 11<br><br>JUDGE: AMC |
| In Re:<br><br>STOWE LEASING, INC.,<br>                              Debtor. | CASE NO. 15-13769<br><br>CHAPTER 11<br><br>JUDGE: AMC |

**MOTION FOR ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 363 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002, 6004 AND 9013 (I) APPROVING FORM, MANNER AND NOTICE OF BIDDING PROCEDURES, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (III) AUTHORIZING THE ADMINISTRATIVE CLAIM OF SAMUEL CORALUZZO CO, INC. IN THE AMOUNT OF $80,000, AND (IV) GRANTING RELATED RELIEF**

Goodman Tank Lines, Inc. and Stowe Leasing, Inc. (the "Debtors"), by and through proposed counsel, Ciardi Ciardi & Astin, hereby submit this motion for the entry of an order (I)

1

approving the form, manner and notice of bidding procedures, (II) authorizing the sale of substantially all of the assets, described herein, free and clear of liens, claims and encumbrances, (III) authorizing the administrative claim of Samuel Coraluzo Co, Inc. in the amount of $80,000, and (IV) granting related relief (the "Motion"), and, in support thereof, respectfully aver as follows:

## JURISDICTION

1. The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are §§105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 9013.

## BACKGROUND

2. On May 29, 2015 (the "Filing Date"), the Debtors separately filed voluntary petitions for reorganization pursuant to chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

3. Since the Filing Date, the Debtors have remained in possession of their assets and continued management of their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. An official committee of unsecured creditors (the "Committee") has not been appointed in either case.

5. The Goodman Tank Lines, Inc. Debtor is a Bulk-Carrier in the multi-state area, hauling fuel from Pennsylvania to Maryland and New Jersey along with Virginia, Delaware and

New York. The Debtor is principally located at 463 Old Reading Pike, Stowe, PA 19464 (the "Premises").

6. The Stowe Leasing, Inc. Debtor is the owner of certain equipment that is leased to the Goodman Tank Lines, Inc. Debtor and is likewise principally located at 463 Old Reading Pike, Stowe, PA 19464.

7. The Debtors have 32 vehicles for which tags and registrations are due to be renewed. The Debtor does not have sufficient funds to pay for the tags from its own cash flow or ongoing operations. In order to facilitate a profitable transition, SAMUEL CORALUZZO CO., INC. or its nominees (the "Buyer") has agreed to advance $80,000 to address the outstanding balance on the Debtors' tags for its vehicles.

8. The Debtors and their mutual principal, Craig D. Goodman (the "Shareholder" and collectively with the Debtors, the "Sellers"), have numerous transportation vehicles, inventory, parts, contracts, customer lists, supplier lists and miscellaneous assets (the "Assets") that they wish to sell to SAMUEL CORALUZZO CO., INC. or its nominees (the "Buyer"). A true and correct copy of the Asset Purchase Agreement (the "Agreement") detailing the assets the Sellers wish to sell is attached hereto and incorporated herein as **Exhibit "A"**.

9. The purchase price for the Assets is $1,420,000 along with such additional amount that Buyer shall pay to purchase equipment currently leased by Sellers from Polar Services as more particularly described in Schedule 1.3 of the Agreement.

10. Moreover, to effectuate an efficient transition of operations, the Buyer has agreed to enter into an Employment Agreement with Craig D. Goodman for a five year period for which Mr. Goodman will assume the title of Vice President of Operations and will be compensated in

3

the amount of $125,000 per annum payable bi-weekly, plus benefits and an annual bonus more fully explained in the Agreement attached hereto as **Exhibit A.**

## BIDDING PROCEDURES

11. The Debtors also seek to sell the Assets subject to higher and better offers.

12. Accordingly, the Debtors request authority to continue to market the Assets until the date of any hearing on approval of this Motion in order to entertain higher and better offers.

13. Any party who complies with the bidding procedure wishing to submit a higher or better offer on the Assets may do so at the time of the hearing on the Motion.

14. The Debtors are not aware of other potential bidders for the Assets, and, therefore, will propose sale and bid procedures to allow any and all bidders the full opportunity to make a proposal.

15. The Debtors seek to establish bidding procedures to facilitate an orderly sale at the hearing on the Motion (the "Sale Hearing").

## THE BASIS FOR RELIEF AND THE REASONS THEREFOR

16. By this Motion, the Debtors seek the entry of two orders by the Court:

    a) Initially, at the Bidding Procedures Hearing, an order to be entered outlining the procedure for entertaining higher and better offers at the Sale Hearing (the "Bidding Procedures Order"); and

    b) Subsequently, at the Sale Hearing, an order to be entered pursuant to section 363 of the Bankruptcy Code approving the sale of the Property free and clear of liens, claims, encumbrances and interests (the "Sale Approval Order").

17. Each of these orders and the reasons and authority for entry thereof are discussed below.

## THE BIDDING PROCEDURES ORDER

18.     The Debtors seek entry of an order approving bidding procedures for the Sale Hearing to encourage only serious offers for the Assets and promote a productive and business-like Sale Hearing.

19.     In connection with the Bidding Procedures Order, the Debtors request the approval of an administrative claim for the Buyer related to the Buyer's payment of $80,000 to the Pennsylvania Department of Transportation, made on behalf of the Debtors, for the renewal and preservation of the Debtors' license plates and tags. If the Buyer is the Successful Bidder, it will waive payment of this administrative claim.

20.     The proposed bidding procedures provide that, in order to be considered higher and better than the offer of Buyer ("Pending Offer") pursuant to the Agreement, competing bids made at the Sale Hearing must satisfy all of the following (any such bid hereinafter referred to as a "Qualified Bid"):

    a. only the Buyer and a party who has submitted a Qualified Bid may bid at the Sale Hearing;

    b. a Qualified Bid must meet the following conditions:

        (i)     It must be in writing and submitted by 5:00 p.m. on June ___, 2015 to counsel for the Debtor, Ciardi, Ciardi & Astin, 2005 Market Street, Suite 3500, Philadelphia, PA 19103, Attn: Albert A. Ciardi, III, Esquire, with a copy to: (i) the Office of the United States Trustee, attn.: _____, 833 Chestnut Street, Suite 501, Philadelphia, Pennsylvania 19107; and (ii) Counsel for the Buyer, J. Earl Epstein, Esq., Epstein, Shapiro & Epstein, P.C., 15th Floor, 1515 Market Street,

Philadelphia, PA 19102.

(ii) The maker of such bid must provide to counsel for the Debtor at least two business days prior to the Sale Hearing reasonably satisfactory evidence of financial capability and good faith intent to fulfill all of the terms and condition of the Agreement on a timely basis, accompanied by payment of an initial cash deposit in available funds in the amount of the $250,000 which shall be refunded to any unsuccessful bidder, as soon as practicable after the conclusion of the Sale Hearing; and

(iii) Any dispute as to any bidder's intent or ability shall be resolved by the Court at the Sale Hearing;

(iv) Any initial counter bid for the Assets must exceed the Pending Offer by $100,000.00, and all bid increments thereafter and assumption of all debt of the Debtor, shall be at least $50,000.00; and

(v) No bidder is required to submit a bid in the same format as any other bidder. However, if bids in other formats are submitted (*i.e.*, bids for other assets other than the Assets), then the Debtor, for purposes of considering "Qualified Bids," shall compare what portion of the other bid relates to the Assets as compared to the Purchase Price.

(vi) A Qualified Bid must contain a provision for the payment of the Buyer's Administrative Claim in the amount of $80,000 upon closing.

c. At the Sale Hearing, the Court shall decide which bid is the highest and best bid and this party shall be determined to be the Successful Bidder.

    d. The offer made by the Buyer is hereby deemed a Qualified Bid and nothing shall prevent the Buyer from making additional bids for the Assets at the Sale Hearing.

    e. Any offer that fails to meet the requirements of this Order shall not be deemed a higher and better offer.

    f. That in the event the Buyer is not the successful purchaser of the Assets, the break-up fee (the "Break-Up Fee") of 3% of the total Purchase Price is approved pending entry of the Bidding Procedures Order by the Court.

    g. Upon satisfaction of the requirements set forth in the Agreement for payment of the Break-Up Fee, the Debtors are hereby authorized and directed to pay to the Buyer the Break Up Fee without further order of this Court as an allowed administrative expense claim under § 503 of the Bankruptcy Code.

    h. Debtors reserve the right to qualify a Second Highest Bidder.

21. The offer made by the Buyer is hereby deemed a Qualified Bid and nothing shall prevent the Buyer from making additional bids for the Assets at the Sale Hearing.

## THE SALE APPROVAL ORDER

22. The Debtors seek the entry of an order pursuant to section 363 of the Bankruptcy Code, approving the Agreement and the sale of the Assets in all respects, free and clear of any and all liens, claims, encumbrances and interests in or on the Assets. The Sale Approval Order reflects the terms of the Agreement.

23. Pursuant to section 541 of the Bankruptcy Code, the Property to be sold to the Buyer under the Agreement (the "Sale"), are assets of the Debtor's bankruptcy estate.

24.    In accordance with sections 363, 1107 and 1108 of the Bankruptcy Code, debtors-in-possession are authorized to sell property of the estate and maximize recoveries for their creditors.

25.    Section 363(b) of the Bankruptcy Code authorizes a debtor or a trustee to sell its assets outside of the ordinary course of business. See 11 U.S.C. § 363(b)(1).

26.    Section 363(f) of the Bankruptcy Code provides, in pertinent part, as follows:

> (f) [t]he trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

27.    Generally, a debtor must show that each of the following elements have been met before a section 363(b) sale may be approved: (i) that a sound business reason exists for the proposed transaction; (ii) that the sale has been proposed in good faith; (iii) that the sale price is fair and reasonable; (iv) that accurate and reasonable notice has been provided of the transaction. See In re WDH Howell, LLC, 298 B.R. 527, 534 (D. N.J. 2003); In re Stroud Ford, Inc., 163 B.R. 730 (Bankr. M.D. Pa. 1993).

28.    Courts have made it clear that a debtor's showing of a sound business justification need not be exhaustive, but rather a debtor or trustee is "simply required to justify the proposed

8

disposition with sound business reasons." In re Baldwin-United Com., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

29.     Whether or not there are sufficient business reasons to justify a sale depends upon the facts and circumstances of each case. In re Lionel Com., 722 F.2d 1063, 1071 (2d Cir. 1983).

30.     "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings." In Re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 142, 147 (3d Cir. 1986). "Typically, the misconduct that would destroy s purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." Id.

31.     Here, the agreement was negotiated at arms length.

32.     The Buyer is not controlled by, or acting on behalf of, any insider of the Debtors.

33.     Moreover, the Agreement is to be submitted subject to the receipt of higher and better offers. Thus, the proposed sale to Buyer constitutes a sale in good faith and for fair value within meaning of Section 363 of the Bankruptcy Code. See id.

34.     The Debtors believe that the prompt sale of the Assets as proposed is in the best interests of the creditors and the estates involved in the above-captioned proceedings.

35.     Without a sale, the Debtors will be unable to address the significant amounts owed to secured and unsecured creditors. Additionally, the Debtors believe that the Purchase Price is fair and reasonable under the circumstances.

36.     Pursuant to the Sale, the Assets shall be sold free and clear of all liens, claims, encumbrances and interests that may be asserted by any entity claiming an interest therein. Such liens, claims, encumbrances and interests shall be transferred and attach to the sale proceeds of

9

the Property, subject to further orders of the Court and the rights, claims, defenses, and objections, if any, of any or all interested parties with respect thereto.

37. Finally, the Debtors submit that bidding incentives, such as the Break-Up Fee, encourage a potential purchaser to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process. "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers." See e.g., In re Magic Brands, LLC, 2010 WL 3493041 (Bankr. D. Del. 2010); In re Holley Performance Products, Inc., 2009 WL 7215691 (Bankr. D. Del. 2009); In re S.N.A. Nut Co., 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995); see also In re 995 Fifth Ave. Assoc. L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).

38. A proposed bidding incentive to be paid to a "stalking horse" such as the Break-Up Fee, should be approved when it is in the best interests of the estate. S.N.A. Nut Co., 186 B.R. at 104. Typically, this requires that the bidding incentive provide some benefit to the debtor's estate. Calpine Corp. v. O'Brien Envtl. Energy, Inc., (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 533 (3d Cir. 1999) (holding even though bidding incentives are measured against a business judgment standard in non-bankruptcy transactions the administrative expense provisions of Bankruptcy Code section 503(b) govern in the bankruptcy context) (hereinafter, "O'Brien"). The O'Brien standard was more recently employed and approved by the Third Circuit in In re Reliant Energy Channelview LP, 594 F.3d 200 (3d Cir. 2010).

10

39. The United States Court of Appeals for the Third Circuit, in O'Brien, has identified at least two instances in which bidding incentives may benefit the estate. First, a break-up fee or expense reimbursement may be necessary to preserve the value of the estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." Id.; see also In re ASARCO, L.L.C., 650 F.3d 593 (5th Cir. 2011) (approving break-up fee that promoted increased bidding by reimbursing for due diligence expenses). Second, if the availability of break-up fees and expense reimbursement were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth. Id.

40. In O'Brien, the United States Court of Appeals for the Third Circuit reviewed nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee. Such factors are as follows:

(a) the presence of self-dealing or manipulation in negotiating the break-up fee;
(b) whether the fee harms, rather than encourages, bidding;
(c) the reasonableness of the break-up fee relative to the purchase price;
(d) whether the unsuccessful bidding placed the estate property in a "sales configuration mode" to attract other bidders to the auction;
(e) the ability of the request for a break-up fee to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders, or attract additional bidders;
(f) the correlation of the fee to a maximization of value of the debtor's estate;
(g) the support of the principal secured creditors and creditors' committees of the break-up fee;
(h) the benefits of the safeguards to the debtor's estate; and
(i) the substantial adverse impact of the break-up fee on unsecured creditors where such creditors are in opposition to the break-up fee.

O'Brien, 181 F.3d at 536.

41. The Break-Up Fee requested herein allows the Debtors to set a floor for the Assets and, thus, insist that competing bids be materially higher or otherwise better than the Agreement, a clear benefit to the Debtors' respective estates. Moreover, and of critical importance, the Buyer would not have agreed to act as a stalking horse bidder without the Break-Up Fee. Without the benefit of the Buyer as a stalking horse bidder, the bids received at Auction for the Assets could be substantially lower than that offered by the Buyer.

42. In the present case, for example, potential purchasers of the Assets will be provided with the Agreement reflecting the terms already negotiated by the Buyer, will have the opportunity to propose changes to those terms, and thereafter will have the opportunity to outbid the Buyer for the Assets. In this way, potential purchasers will have the benefit of the negotiations and due diligence already undertaken by the Buyer and will thus be more likely to bring their own competing bid and increase competition, and potentially, value to the estate, at the Auction. Further, it is appropriate and reasonable to compensate the Buyer for undertaking the efforts and expenditures to establish a "floor" bid for the Assets, as well as establishing the terms for the sale and assignment of such assets in the event a sale is made to another purchaser. For these reasons, extending bid protections to the Buyer as proposed in the Agreement and this Motion is an exercise of the Debtors' sound business judgment.

43. In addition, "[a] break-up fee should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser. When reasonable in relation to the bidder's efforts and to the magnitude of the transaction, break-up fees are generally permissible." Id. (internal citation omitted).

12

44. The Break-Up Fee in this case is calculated as 3% of the total purchase price. Under the circumstances and in light of the amount of the total purchase price, the Debtors assert that the requested break-up fee is reasonable and requests that it be approved. Specifically, the Debtors note that the contemplated transaction involves the valuation, by the Buyer, of the Assets. Therefore, the Break-Up Fee is fair and reasonable given the amount of time, work and money the Buyer has devoted to this Sale.

## THE SALE COMPLIES WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 6004(f)(1).

45. Federal Rule of Bankruptcy Procedure 6004(f)(1) provides that all sales not in the ordinary course of business may be by private sale or public auction. See Fed. R. Bankr. P. 6004(f)(1).

46. Notice of the proposed private sale should include the terms and conditions of any private sale and fix the time for filing objections. The Debtors submit that the Notice attached hereto and incorporated herein as **Exhibit B** meets the above requirements.

## APPROVAL OF THE AGREEMENT IS WARRANTED

47. The applicable principle of law with respect to the approval of asset sales in bankruptcy is stated in the case of In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983). The Court in Lionel held that approval of a sale is appropriate if the court finds the transaction represents a reasonable business judgment on the part of the debtor. See also, Stephens Industries v. McClung, 789 F.2d 3863 (6th Cir. 1986); In re Coastal Industries. Inc., 63 B.R. 361 (Bankr. N.D. Ohio 1986), In re Baldwin United Corp., 43 B.R. 888 (Bankr. S.D. Ohio 1984).

48. In light of the foregoing, the Debtors have determined that the Sale to Buyer on the terms and conditions set forth in the Agreement is appropriate and in the best interest of its estate and all parties in interest.

49.  The Sale will enable the Debtors to fund their respective plans that can provide for a distribution to secured and unsecured creditors that likely would not be available absent the Sale.

WHEREFORE, the Debtors respectfully request that this Court (i) enter an Order approving the Bidding Procedures and the sale of the Assets in a form substantially similar to the attached proposed form of Order, (ii) enter an Order approving the sale of the Property free and clear of liens, claims, encumbrances and interest in a form substantially similar to the attached proposed form of Order, and (iii) grant such other and further relief as this Court deems just.

Dated:  By: _____
CIARDI CIARDI & ASTIN
Albert A. Ciardi, III, Esquire
Jennifer E. Cranston, Esquire
One Commerce Square, Suite 3500
2005 Market Street
Philadelphia, PA  19103
(215) 557-3550
(215) 557-3551 fax

*Proposed Counsel to the Debtor
and Debtor-in-Possession*