UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:

Goodman Tank Lines, Inc.,

Debtor.

: CHAPTER 11
:
:
: BANKRUPTCY NO. 15-13768-AMC
:

**MOTION FOR INTERIM AND FINAL ORDERS (A) AUTHORIZING
DEBTOR TO RATIFY AND ADOPT FINANCING AGREEMENT,
(B) GRANTING PRIORITY ADMINISTRATIVE
EXPENSE CLAIMS AND LIENS SECURED BY PROPERTY OF
THE ESTATE PURSUANT TO SECTIONS 363 AND 364 OF THE
BANKRUPTCY CODE AND (C) SCHEDULING AN INTERIM HEARING ON
AN EXPEDITED BASIS AND SCHEDULING A FINAL
<u>HEARING PURSUANT TO BANKRUPTCY RULE 4001</u>**

TO THE HONORABLE ASHLEY M. CHAN,
UNITED STATES BANKRUPTCY JUDGE:

Goodman Tank Lines, Inc., as debtor and debtor in possession (the "Debtor"), respectfully submits this motion (the "Motion") for an order, pursuant to sections 105(a), 361, 362, 363(b)(1) and 364(c)(2) of title 11 of the United States Code (the "Bankruptcy Code"), authorizing to Debtor to ratify, reaffirm and adopt, as modified and supplemented, its pre-petition financing arrangement with Marquette Transportation Finance, ("Marquette" or "Marquette"). In support of this request, the Debtor states:

## INTRODUCTION

1. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief the Debtor seeks are sections 105(a), 361, 362, 363(b)(1) and 364(c)(2) of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy Procedure.

3. No request has been made for the appointment of a trustee or examiner, and no official committee has yet been appointed in this case.

## BACKGROUND

4. The Debtor is in the business of hauling gasoline throughout Pennsylvania, New Jersey, Ohio and Maryland. The Debtor has five terminals throughout the aforementioned states.

5. Marquette asserts a first lien position on the Debtor's accounts receivable.

6. The Debtor, as of the Petition Date, has approximately 75 employees which consist of 39 drivers, 16 owners/operators and 20 office personnel and pays approximately $70,000.00 in payroll per pay period.

### The Pre-Petition Financing Agreement

7. Since 2014, Marquette has been providing the Debtor's financing through an accounts receivable financing facility. On or about November 6, 2014, the Debtor and Marquette entered into a Revolving Credit and Security Agreement (the "Financing Agreement"). A copy of the Finance Agreement is annexed as Exhibit "A."

Pursuant to the Finance Agreement, Marquette has been lending on certain of the Debtor's accounts receivable (the "Pre-Petition Receivables").

8. The Debtor receives 90% of face value.

9. To secure the Debtor's obligations under the Finance Agreement, the Debtor granted to Marquette a security interest in all of the Debtor's accounts receivable and their proceeds, as well as on any property of the Debtor in the possession of Marquette (collectively, the "Pre-Petition Collateral").

10. As of the Petition Date, the Debtor was indebted to Marquette, without defense, counterclaim, recoupment or offset of any kind, in the aggregate amount of $390,511.53 as of May 9, 2015 in respect of advances on Pre-Petition Receivables, and other financial accommodations made by Marquette to the Debtor in accordance with the Finance Agreement, plus accruing financing fees and charges, based upon outstanding Pre-Petition Receivables of $429,000.00 (the "Pre-Petition Obligations").

11. The Pre-Petition Obligations are secured by valid, enforceable and properly perfected first priority liens on and security interests in the Pre-Petition Collateral. Copies of filed Uniform Commercial Code financing statements perfecting such liens are annexed hereto as Exhibit "B."

12. With the protection of the Bankruptcy Court, and the Debtor's ability to continue to obtain financing under the Finance Agreement, the Debtor is confident that it will continue operating in the ordinary course of business while paying its employees and other post petition obligations on a timely basis.

13. Marquette has indicated its willingness to continue to finance certain of the Debtor's accounts receivable on a post-petition basis (the "Post-Petition

Receivables") and make advances and financial accommodations to the Debtor pursuant to the terms and conditions of the Finance Agreement, as modified and supplemented by the proposed Interim Order (A) Authorizing Debtor to Ratify and Adopt Finance Agreement and Authorizing the Finance of Receivables Thereunder, (B) Granting Priority Administrative Expense Claims and Liens Secured by Property of the Estate Pursuant to Sections 363 and 364 of the Bankruptcy Code and (C) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 (the "Proposed Interim DIP Financing Order"), which is attached hereto as Exhibit "D," and, thereafter, by a final order on substantially similar terms acceptable to Marquette. The Debtor and Marquette are currently working on the Order and it is subject to change.

## SUMMARY OF THE PROPOSED DIP FINANCING

14. The significant elements of the Financing Agreement as modified and supplemented by and the Proposed Interim DIP Financing Order (collectively, the "DIP Financing Documents") are:[1]

Marquette is willing to advance on certain post-petition receivables pursuant to the Finance Agreement from Debtor provided that the maximum outstanding Down Payment for all Pre-Petition Receivables and Post-Petition Receivables shall not at any time (after application of collections calculated on a weekly basis) exceed $1,200,000 ("Post-Petition Collateral");

Pre-Petition Receivables will be collected and satisfy pre-petition debt;

Upon collection of a Post-Petition Receivable, Marquette will hold in Reserve the difference between the Down Payment and the advance, and pay to the Debtor the Reserve on a weekly basis, provided that there are no outstanding chargebacks or disputes relating to Post-Petition Receivables or defaults under the DIP Financing Documents;

Under the Financing Agreement, to secure all amounts owing to Marquette, the Debtor grants Marquette a security interest in all accounts and their proceeds and all property of the Debtor in Marquette's possession; and

Under the Proposed Interim DIP Financing Order, the Debtor is granting Marquette a super-priority claim and a first priority security interest in all pre-petition and post-petition accounts to secure the Debtor's obligations under the Financing Agreement and an adequate protection claim for any diminution in the pre-Petition Date collateral of Marquette, including cash collateral, subject to a certain carve-out for U.S. Trustee fees, certain fees and expenses of any chapter 7 trustee, and certain fees and expenses of professionals retained in this case. There shall be no cross-collateralization of pre and post-petition obligations.

Events of Default. As set forth in the Proposed Interim DIP Financing Order, the following are Events of Default:

(i) the Debtor's Chapter 11 case is either dismissed or converted to a Chapter 7 case;

---

[1] This summary is qualified in its entirety by reference to the provisions of the Financing Agreement and Proposed Interim DIP Financing Order. Unless otherwise defined herein, capitalized terms shall have the meanings ascribed therein and in the Proposed Interim DIP Financing Order.

    (ii)  a trustee or an examiner with expanded powers is appointed in the Debtor's chapter 11 case;

    (iii)  the Debtor ceases operations of its present business or takes any material action for the purpose of effecting the foregoing without the prior written consent of Marquette;

    (iv)  the Proposed Interim DIP Financing Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Marquette, materially and adversely affect the rights of Marquette hereunder or shall materially and adversely affect the priority of any or all of Marquette's claims, liens or security interests;

    (v)  the occurrence subsequent to the Petition Date of an Event of Default under the Financing Agreement, other than any Event of Default occurring and/or existing solely because of the commencement of the Bankruptcy Case on the Petition Date;

    (vi)  non-compliance or default by the Debtor with any of the terms and provisions of the Proposed Interim DIP Financing Order.

    (x)  The Financing Agreement expires October 31, 2015 unless extended by the parties or the Court enters a final order approving this financing in form and substance acceptable to Marquette prior to such time.

  15.  The parties contemplate, and Marquette acknowledges, that as of the Petition Date, Marquette will continue to collect Pre-Petition Receivables, and will be granted relief from the automatic stay pursuant to section 362 of the Bankruptcy Code to (i) set off against the Pre-Petition Obligations any collections in respect of the Pre-Petition Receivables, and (ii) retain and apply any amounts credited to the reserve account under the Financing Agreement to the repayment of the Pre-Petition Obligations, free from any claim arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code.

  16.  The Debtor and Marquette have agreed to continue their financing arrangement post-petition on largely the same terms and conditions as existed pre-

petition. The Debtor seeks an order in the form of the annexed Proposed Interim DIP Financing Order so that Marquette may begin advancing on accounts receivable as soon as possible.

## AUTHORITY FOR RELIEF

17.     The Debtor seeks authority to continue performing under the Financing Agreement on a post-petition basis and to grant to Marquette the contemplated super-priority claims and senior security interests. Section 363(b)(1) of the Bankruptcy Code provides that the Debtor may use, sell or lease property of the estate, other than in the ordinary course of business, without notice and a hearing. Section 364(c)(2) authorizes the Debtor to obtain credit secured by a lien on property that is not otherwise subject to a lien. Section 105(a) permits the Court to enter any order that is necessary to carry out the provisions of the Bankruptcy Code to further the Debtor's reorganization efforts.

18.     Under the terms of the DIP Financing Documents, the Debtor will continue to finance its accounts to Marquette in the normal course substantially as it has pre-petition. The Debtor submits that this course of conduct is routine and has existed for the last six months. Therefore, the Debtor believes that the requirements of section 363(b)(1), that the Debtor use its property in the exercise of sound business judgment, is satisfied, and the Debtor should be authorized to continue this practice post-petition.

19.     Under the DIP Financing Documents, the obligations of the Debtor to the extent of any unpaid receivables by the Debtor's various account debtors (other than due to certain account debtor insolvency related Marquettes), and for over-advances

7

and other financial accommodations to be made by Marquette, will constitute super-priority obligations pursuant to sections 105 and 364(c)(1) of the Bankruptcy Code with recourse to the Pre-Petition Collateral and Post-Petition Collateral of the Debtor and the proceeds thereof, subject only to the carve-out described above.

20.     The terms of the DIP Financing Documents include, among other things, the grant to Marquette, pursuant to section 364(c)(2) of the Bankruptcy Code, of a first-priority, valid, binding, enforceable and perfected liens and security interests, in all of the Debtor's presently owned and hereafter acquired accounts and their proceeds, whether such property was acquired by the Debtor before or after the Petition Date (collectively, the "Collateral") (to the extent acquired after the Petition Date, the "Post-Petition Collateral").

21.     The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code[2] is a finding, made after notice and a hearing, that the debtor in possession is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code] as an administrative expense." *See In re Garland Corp.*, 6 B.R. 456, 461 (1st Cir. BAP 1980) (secured credit under section 364(c)(2) is

---

[2] Section 364(c) of the Bankruptcy Code provides that:

If the trustee [or debtor in possession] is unable to obtain secured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –

(1) with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

8

authorized, after notice and a hearing, upon showing that unsecured credit cannot be obtained); *In re Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa.), *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (debtor seeking unsecured credit under section 364(c) of the Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code); *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37-39 (Bankr. S.D.N.Y. 1990) (debtor must show that it has made a reasonable effort to seek other sources of financing under sections 364(a) and (b) of the Bankruptcy Code).

22. Where (a) the debtor is unable to obtain unsecured credit on an administrative expense basis pursuant to section 364(b), (b) the credit transaction is necessary to preserve the assets of the estate, and (c) the terms of the transaction are fair, reasonable and adequate given the circumstances of the debtor-borrower and the proposed lender, financing under section 364(c) is appropriate. *See, e.g., In re Aqua Associates*, 123 B.R. 192, 195-6 (Bankr. E.D. Pa. 1991); *Ames Dept. Stores*, 115 B.R. at 37-39.

## Obtaining Credit On An Unsecured Basis

23. The Debtor submits that it would be impossible to obtain unsecured credit during the pendency of this case as the Debtor has no significant unencumbered assets. In accordance with Section 364(c), the Debtor represents that it is unable to obtain credit for its operations on an (a) unsecured basis; (b) on the basis of an administrative expense claim; or (c) on any basis more favorable to the Debtor than proposed in the Motion.

24.   A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d). *Id.; see, also, In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989).

25.   The Debtor's ability to continue its financing arrangement with Marquette is a critical component of the Debtor's successful chapter 11 case. The Debtor concluded that its efforts to arrange a financing facility during its case should be focused upon its existing Marquette and, therefore, the Debtor elicited a proposal from Marquette, which was to continue its prepetition relationship without any increase in fees. In the exercise of its business judgment, the Debtor elected to proceed with such an arrangement.

### Necessity Of The Financing

26.   As described above, after appropriate investigation and analysis and given the exigencies of the circumstances, the Debtor's management has concluded that continuing its financing arrangement is necessary to preserve the assets of the estate. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See, Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)

(same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

27.     In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id.* at 513-14 (footnotes omitted). *See In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the debtor in possession of facilities were approved because they "reflect[ed] sound and prudent business judgment on the part of TWA . . . [were] reasonable under the circumstances and in the best interests of TWA and its creditors"); *Cf., In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Co. 1985) ("Business judgments should be left to the board room and not to this Court"); *In re Lifeguard Industries, Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); *In re Curlew Valley Associates*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second guess a debtor in possession's business decision when they involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

28. Without the liquidity provided by the DIP Financing Documents, the Debtor will be unable to pay suppliers, employees, and other constituencies that are essential to the orderly operation of their businesses. The Debtor's managers have exercised their best business judgment in negotiating the DIP Financing Documents that is presently before the Court.

29. No party in interest can seriously contend that the Debtor does not need immediate access to a working capital facility.

30. Accordingly, access to credit is necessary to meet the day-to-day costs associated with maintaining business relationships with the Debtor's vendors and suppliers, purchasing new inventory, and otherwise financing its operations. Access to sufficient cash is therefore critical to the Debtor. In the absence of immediate access to cash and credit, the Debtor's suppliers will refuse to sell critical supplies and services to the Debtor, and the Debtor will be unable to operate its business. The inability to meet payments to vendors and satisfy customers would seriously impair the Debtor's prospects for reorganization. A budget for use is attached as Exhibit "C".

## Fairness Of The Financing

31. In the Debtor's considered business judgment, the terms of the DIP Financing Documents are reasonable under the circumstances of this case. These terms neither (a) tilt the conduct of these cases and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by

parties in interest from being decided on their merits. The purpose of the financing facility is to enable the Debtor to meet ongoing operational expenses.

32.     Similarly, the Debtor believes that the various fees and charges required by Marquette under the DIP Financing Documents are commercially reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Section 364 of the Bankruptcy Code. *See, In re Defender Drug Stores, Inc.*, 145 B.R. 312, 316 (9th Cir. BAP 1992) (authorizing credit arrangement under Section 364, including a lender "enhancement fee"). Here Marquette is not requesting any greater fees than it received during the course of pre-petition financing of the Debtor.

33.     In addition, pursuant to the Proposed Interim DIP Financing Order, (a) any official committee shall have through and until the earlier of the 60th day following the date of the Court's order approving the appointment of the committee's counsel or the 75th day following the date of formation of the committee to commence an adversary proceeding against Marquette for the purpose of challenging the validity, extent, priority, perfection and enforceability of Marquette's pre-petition liens and security interests in and/or ownership of the Debtor's assets, and (b) in the event that no committee is appointed, any person or entity other than the Debtor and the committee shall have through and until the 90th day following the date of entry of the Proposed Interim DIP Financing Order to file a motion with the Court seeking authorization to commence an adversary proceeding as estate representative against Marquette for the purpose of challenging the validity, extent, priority, perfection and enforceability of Marquette's pre-petition liens and security interests in and/or ownership of the Debtor's

assets. Any such person or entity, including without limitation an official committee that fails to commence such an adversary proceeding or file such motion, respectively, within the applicable time period shall be barred forever from doing so.

34. The Debtor submits that the financing of Post-Petition Receivables to Marquette is arm's-length financing under applicable law, including the Uniform Commercial Code (the "UCC"), for the reasons that: Post-Petition Receivables will prove uncollectible due solely to certain insolvency related (ii) the advance paid by Marquette for the Post-Petition Receivables is commercially reasonable.

35. In sum, the Debtor has exercised sound and prudent business judgment in determining that post-petition credit is necessary and appropriate, and it has satisfied the legal prerequisites to incur debt. The Debtor believes that the financing of the Post-Petition Receivables by Marquette provides a vital source of working capital, is in the best interests of the Debtor and its estate and is necessary to avoid immediate and irreparable harm. Entering into the DIP Financing Documents will help to ensure that the Debtor will be able to finance the Post-Petition Receivables on a continuing basis. In short, without approval of the relief requested, the Debtor will be unable to continue operating. Accordingly, the Debtor should be granted authority to enter into the DIP Financing Documents and finance its Post-Petition Receivables with Marquette.

## REQUEST FOR EXPEDITED CONSIDERATION

1. The Debtor requests expedited treatment in connection with the Motion because it requires the immediate access to liquidity to fund the ongoing operations

mentioned in the Motion. Accordingly, the Debtor requests that a hearing on this Motion be held at the convenience of the Court but no later than June 3, 2015.

2. As of the filing of this Motion, no trustee, examiner or creditor's committee has been appointed in this Chapter 11 case. Notice of this Motion has been given via facsimile or electronic mail to the Office of the United States Trustee and counsel for Marquette. No previous request for the relief sought herein has been made to this or any other Court.

3. Prior to filing this Motion, counsel for the Debtor contacted the Counsel for the Office of the United States Trustee and Counsel for Marquette to advise them of the request for an expedited hearing and the relief requested therein.

**WHEREFORE**, the Debtor respectfully requests entry of an order substantially in the form annexed hereto as Exhibit "D" approving and authorizing the DIP Financing Documents, together with such other and further relief as may be just and proper.

Dated: May 29, 2015

          **CIARDI CIARDI & ASTIN**
          Proposed Attorneys for the
         Debtor and Debtor in Possession


         By:*/s/ Albert A. Ciardi, III*
          Albert A. Ciardi, III, Esquire
          Jennifer E. Cranston, Esquire
          Adrienne N. Anderson, Esquire
          One Commerce Square, Suite 3500
          2005 Market Street
          Philadelphia, PA 19103
          (T) 215-575-3550
          (F) 215-575-3551
          Proposed Attorneys for the Debtor and
          the Debtor-in-Possession